IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAO GROUP, INC., | |
| Plaintiff, | Case No.: 1:24-cv-01211 |
| v. | Judge Thomas M. Durkin |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," | Magistrate Judge Jeannice W. Appenteng |
| | JURY TRIAL DEMAND |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO MODIFY THE TEMPORARY RESTRAINING ORDER AND MOTION TO MODIFY THE PRELIMINARY INJUNCTION AS TO THE ASSET FREEZE**

Plaintiff CAO Group, Inc., ("Plaintiff") submits Response brief in opposition to Defendant No. 8 GD-Whitening's ("GD") Emergency Opposed Motion to Modify the Temporary Restraining Order [36] (the "Emergency Motion") and Defendants Nos. 4 DEEPSOUND, 5 BYS Technology, 10 Carbonline, 23 Moose Store, 26 BLUE ELF, and 27 Acupress (collectively, "DEEPSOUND Defendants") (GD and DEEPSOUND Defendant collectively, "Appearing Defendants")'s Motion to Modify the Preliminary Injunction [50] (the "DEEPSOUND Motion") (collectively, the "Motions").

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

Plaintiff brought this action against the Defendants identified on Schedule A [19-1] to the Verified Amended Complaint [19] (the "Defendants") for utility patent infringement and unjust enrichment. The Court granted Plaintiff's Motion for Temporary Restraining Order ("TRO") [23]

1

and Motion for Preliminary Injunction [43]. *See* [26] and [47], respectively. Both the TRO and Preliminary Injunction restrained the assets of the Defendants. Appearing Defendants have filed motions which challenge the asset restraint and Plaintiff's unjust enrichment claim – stating that utility patent infringement does not allow for the equitable relief of an asset restraint and that the unjust enrichment claim is preempted by federal law. Both positions are incorrect. As outlined further below, courts have the power to freeze assets in utility patent infringement cases and Plaintiff's unjust enrichment claim is not preempted by federal law.

**II.    ARGUMENT**

None of the Appearing Defendants challenged Plaintiff's Motion for Preliminary Injunction, opting instead to challenge the asset restraint and Plaintiff's unjust enrichment claim, with the only challenge to the unjust enrichment claim being that it is preempted by the patent infringement claims. Thus, the Appearing Defendants have at the very least, not challenged Plaintiff's assertions that 1) there is a likelihood of success on the merits, as to Plaintiff's patent infringement claim; 2) Plaintiff will be irreparably harmed without an injunction in place; 3) the balance of harm favor's the Plaintiff; and 4) the public interest is not disserved by the preliminary injunction. *See* [44]. Additionally, the Appearing Defendants do not contend the merits of Plaintiff's unjust enrichment claim, except to say that it is preempted by Plaintiff's claims for patent infringement. Thus, if Plaintiff can demonstrate that conflict preemption does not apply to its unjust enrichment claim, then Plaintiff satisfies the elements for a preliminary injunction to be entered on the unjust enrichment claim as well, since no other challenge to the unjust enrichment claim has been raised, despite all Defendants having an opportunity to do so.

   A.  Asset Restraint is Proper in Utility Patent Cases

      1.  <u>An asset restraint is proper in utility patent cases</u>.

Appearing Defendants, when stating that an asset restraint is improper in utility patent cases, rely on the claim that utility patent claims cannot receive equitable monetary relief and that the Court's ruling in *AJ's Nifty Products v. the Individuals, et al.*, 23-cv-04131,[1] is evidence that utility patent claims do not allow for equitable monetary relief. However, the Court in *AJ's Nifty Products* relied heavily on the Supreme Court's opinion in *Grupo Mexicano de Desarrollo, S.A.* in coming to its opinion. *See AJ's Nifty Products*, 23-cv-04131, [69] at pg. 11-12 (N.D. Ill. Jan. 9, 2024) (J. Kendall).

"However, courts have interpreted *Grupo Mexicano*'s holding to be restricted to actions at law where the plaintiff seeks only money damages. Accordingly, federal courts have granted orders freezing assets where the plaintiff sought both legal and equitable relief." *Revolutions Med. Corp. v. Medical Inv. Group, LLC*, 2012 U.S. Dist. LEXIS 186815, at *15 (D. Mass. Nov. 7, 2012) (citations to collected cases omitted); *see also Quantum Corp. Funding, Ltd. v. Assist You Home Health*, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) ("Indeed, courts since *Grupo Mexicano* have consistently found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets.") (and collecting cases). As the Second Circuit has explained, the Court has authority to freeze a defendant's assets where the plaintiff is "pursuing a claim for final equitable relief [ ] and the preliminary injunction is ancillary to the final relief." *Gucci Am. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014) (citing *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 219-20 (1945).

In contrast to the breach of contract and monetary damages at issue in *Grupo Mexicano*, Plaintiff's patent infringement claims raises both equitable and legal damages. *See e.g., Reebok Int'l Ltd. v. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (the patent statute provides that district

---

[1] Appearing Defendants refer to this case by the name *ABC Products v. the Individuals, et al.*, however, the case was brought under a pseudonym and the correct name for the Plaintiff is "AJ's Nifty Products."

3

courts have authority to grant injunctive relief "to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money") *abrogated on other grounds, eBay Inc.* 547 U.S. 388, *as recognized in Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1305 (D. Utah 2008); *see also Hybritech, Inc.* 849 F.2d 1457. Moreover, the assets to be frozen (*i.e.*, the balance in Appearing Defendants' marketplace accounts) are directly tied to the claims of infringement and the equitable relief sought for that infringement because, as alleged in the Verified Amended Complaint, it is through those accounts that Appearing Defendants conducted their infringement. *See e.g.*, [19] at ¶¶ 3, 20, and 33. In other words, Plaintiff has not sought a freeze against an unrelated asset simply to provide funds for a later legal remedy. Rather, Plaintiff has sought a freeze to protect the relief sought against the specific frozen assets contained in the infringing account.

2. <u>The Courts in this District are split on whether an asset restraint is proper in utility patent infringement cases.</u>

Courts, including Courts in this district, disagree with the Court's ruling in *AJ's Nifty Products*. As a bit of procedural background, Plaintiff's Motion for Entry of a Preliminary Injunction in *AJ's Nifty Products* was filed on August 2, 2023. *See* 23-cv-04131, [28]. Attorneys Adam Urbanczyk and Brian Swift of AU LLC represented the Defendant, BonWeiry, in its opposition of Plaintiff's Motion and filed a Response Brief. *See* 23-cv-04131, [34], filed on August 6, 2023. However, the Court's ruling Plaintiff's Motion for Entry of a Preliminary Injunction, the opinion cited by the Defendant, was not released until January 9, 2024. *See AJ's Nifty Products*, 23-cv-04131, [69].

However, between August 6, 2023 and January 9, 2024, counsel for Plaintiff (the same counsel for Plaintiff in this matter) filed Complaint for utility patent infringement on behalf of Hong Kong Xingtai International Trade Co. Ltd. and was granted a TRO in that case. *See Hong*

4

*Kong Xingtai Int'l Trade Co. Ltd. v. the Individuals, et al.*, 23-cv-15836, [19] (N.D. Ill. Nov. 17, 2023). The very same counsel for BonWeiry filed an Emergency Motion to Modify Asset Restraint in this subsequent case, prior to a Motion for Entry of a Preliminary Injunction. *See Hong Kong Xingtai Int'l Trade Co. Ltd.*, 23-cv-15836, [50]. Both the Emergency Motion to Modify Asset Restraint, 23-cv-15836 [50], and BonWeiry's Response in Opposition to Plaintiff's Motion for Entry of Preliminary Injunction, 23-cv-04131 [34], share nearly identical arguments regarding why an asset freeze in utility patent cases is improper, with the Emergency Motion to Modify Asset Restraint citing some additional caselaw. *Compare Hong Kong Xingtai Int'l Trade Co. Ltd. v. the Individuals, et al.*, 23-cv-15836, [50] at pgs. 3-5 to *AJ's Nifty Products*, 23-cv-04131, [34] at pgs. 6-8.

Despite making nearly identical arguments regarding the asset restraint, the Court in *Hong Kong Xingtai International Trade Co. Ltd.*, did not dissolve the asset restraint as to the Defendants represented by AU LLC. *See Hong Kong Xingtai Int'l Trade Co. Ltd. v. the Individuals, et al.*, 23-cv-15836, [67] (The Court entered a Minute Entry where the TRO was dissolved as to Defendants who challenged Plaintiff's likelihood of success on the merits and, with Plaintiff's agreement, modified the asset restraint as to AU LLC's client as to restrain only the amount in infringing sales (approximately $870,000.00 of the $2.6 million dollars restrained, *see* [59]), but kept the asset restraint in place as to all remaining defendants) (J. Pallmeyer). Here, Appearing Defendants made no such challenge as to the likelihood of success on the merits.

Additionally, other Court's in this jurisdiction have allowed for asset restraints in utility patent cases. *See, e.g., 1348671 B.C. LTD. v. The Individuals, et al.*, 23-cv-04002 (N.D. Ill. Aug. 22, 2023) (J. Rowland); *Hong Kong Xingtai International Trade Co. Ltd. v. The Individuals, et al.*, 23-cv-15481 (N.D. Ill. Mar. 12, 2024) (J. Maldonado) (unpublished); and *CAO Group, Inc. v. The*

5

*Individuals, et al.*, No. 23-cv-00901 (N.D. Ill. Mar. 27, 2024) (J. Maldonado) (unpublished). In fact, other jurisdictions agree with this practice as well. *See Zhujitop Hardware Tools Co., LTD v. Individuals, et al.*, 2021 U.S. Dist. LEXIS 212094 at 9 (S.D. Fla. Aug. 2, 2021); *Qin v. P'ships & Unincorporated Ass'ns on Schedule "A,"* 2022 U.S. Dist. LEXIS 3298 at 13 (W.D. Tex. Jan. 7, 2022); and *XYZ Corp. v. Individuals, P'Ships & Unincorporated Ass'ns Identified in Schedule "A,"* 2024 U.S. Dist. LEXIS 16590 at 10 (S.D. Fla. Jan. 30, 2024).

**B. The Court Can Look to Defendants' Being Foreign Infringers in Determining Whether an Asset Restraint is Appropriate.**

As Plaintiff asserted in its Memorandum in Support of its Motion for Entry of a Temporary Restraining Order [24], the Appearing Defendants are permitted a certain level of anonymity and evasiveness, are operating through an online marketplace while being located abroad, and, without an asset restraint in place, could move assets to accounts outside of this Court's jurisdiction. *See* [24] at pg. 11. These concerns also give rise to why an asset restraint would be proper in the current circumstances.

"Plaintiff raises its concern that Defendants are foreign individuals and entities that reside in foreign jurisdictions with no presence in the United States, making any attempt to collect a monetary judgment unlikely. ECF No. 19 at 7. This Court, along with countless others, agrees. *See Bosch*, 659 F.3d at 1156 (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 U.S. Dist. LEXIS 25948, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), where '"all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages"'); *Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 U.S. Dist. LEXIS 30085, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ('[A] finding of irreparable harm was not clearly [*8] erroneous because it also found that since

AE Tech is a foreign corporation, money damages would be insufficient.'); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) ('the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm'); *Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ('[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgment against Bestwinn')."*Qin v. P'ships & Unincorporated Ass'ns on Schedule "A,"* 2022 U.S. Dist. LEXIS 3298 at 7-8 (W.D. Tex. Jan. 7, 2022).

Even now, the Appearing Defendants offer little to no identifiable information. Based on the information available to the Court, it is unclear whether GD is part of a larger group of infringers, including other Defendants – based upon GD's name and the infringing product it offers for sale, and if the DEEPSOUND Defendants are a single entity or multiple entities. An asset restraint ensures participation in this legal process, with recourse for both the Plaintiff and the Appearing Defendants. Without an asset restraint in place, Appearing Defendants could move their assets and leave Plaintiff with little to no recourse or remedy for Appearing Defendants' infringing activity. *See Hong Kong Xingtai Int'l Trade Co. Ltd. v. the Individuals, et al.*, 23-cv-15836, [137] and [164] (Motions to Withdraw as Counsel, citing that Defendants were "unresponsive and uncooperative," after the asset restraint was lifted).

Thus, even if this Court took the approach of the Court in *AJ's Nifty Products*, an asset restraint might still be appropriate. In *AJ's Nifty Products*, Court ruled that the Plaintiff would only be entitled to a reasonable royalty. *See* 23-cv-04131, [69] at 11-12 (*citing* 35 U.S.C. § 284) (additional citations omitted). To determine reasonable royalty damages, a "willing licensor-willing licensee" approach is used. This approach attempts to ascertain the royalty upon which the

7

parties would have agreed had they successfully negotiated an agreement just before infringement began. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 n.13 (Fed. Cir. 1995) (*en banc*); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986) ("The determination of a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began").

While this analysis is often hypothetical, that is not the case here. As has been mentioned, Plaintiff has an active licensing agreement in place with Proctor & Gamble. In that instance, two sophisticated parties, which include the Plaintiff and some of the relevant patentable subject matter, engaged in an actual negotiation to determine the value of Plaintiff's Patents. While Plaintiff cannot disclose the amount in a public filing, Plaintiff can state that it is a fully paid-up license (*i.e.,* the license was paid for in full, up front) and was worth many times more than what is restrained in the Appearing Defendants' currently restrained financial accounts.[2] It was not a royalty based merely on product sales. Should the Court require, Plaintiff would provide the Court with proof for an *in camera* inspection.

### C. Plaintiff's Claim for Unjust Enrichment is not Pre-empted by Federal Law.

Plaintiff also asserts a claim for unjust enrichment against the Defendants, making it distinguishable from many of the previously cited cases – including *AJ's Nifty Products*, 23-cv-04131. Appearing Defendants argue that this claim does not have a likelihood of success on the merits as it is barred by conflict preemption due to Plaintiff's patent infringement claims, merely because it stems from the infringement of Plaintiff's Patents.

---

[2] Counsel for GD has reviewed the aforementioned agreement.

Federal patent law does not provide for explicit preemption. *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. Sep. 3, 2003). However, state law cannot offer "patent-like protection to intellectual creations that would otherwise remain unprotected as a matter of federal law." *Id* (*citing Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 156 (1989); and *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1363 (Fed. Cir. May 5, 1999). However, this does not prevent states from offering additional protections to federally protected intellectual property, nor does the Supremacy Clause, by which preemption is derived, "require full consonance between federal and state intellectual property protections." *Univ. of Colo. Found., Inc.*, 342 F.3d at 1306 (*citing Goldstein v. California*, 412 U.S. 546 (1973) ("holding that federal copyright law does not preempt state copyright law providing greater protection); and *Kewanee v. Bicron*, 416 U.S. 470 (1974) ("holding that federal patent law does not preempt state trade secret law protection unpatentable processes")).

While Defendants do certainly infringe Plaintiff's Patents, the issue under Plaintiff's unjust enrichment claim is not about Plaintiff's damages suffered as a result of the infringement. Rather, it is how Defendants have traded upon the reputation, good will, research, and/or development of Plaintiff's Products and eroding Plaintiff's carefully curated distribution network and disrupting its marketing strategies. Plaintiff's Products are not easily sold directly to users who would use the products at home. Those users often find Plaintiff's Products through Plaintiff's licensees and/or through Plaintiff's distributor. However, Plaintiff's Products are marketed towards dental offices, as Plaintiff also sells high end dental equipment, along with Plaintiff's Products, on its website (https://caogroup.com/). Defendants, by selling Unauthorized Products, traded upon the reputation, good will, research, and/or development associated with Plaintiff's Products, including and especially the research and development it took to make teeth whitening strips which use a

9

peroxide bleaching agent, a PVP-thickening agent, and other characteristics which should be exclusively associated with Plaintiff's Products.

However, due to Defendants' infringing conduct, Plaintiff's carefully curated distribution network and marketing strategies are disrupted, with attention, online traffic, and eventually sales being drawn away from Plaintiff's website and from its distributor and licensees. Instead, that goes to the Defendants, who use this opportunity to also sell other dental hygiene related products in their stores, such as Defendant No. 27 Acupress, who is selling a travel charger for an electric toothbrush. *See Fig. 1* (below).



*Fig. 1* - Defendant No. 27 Acupress (A32SEX6CGLBPEK)

Clearly, Plaintiff is not seeking to use unjust enrichment to merely offer "patent-like" protections to its intellectual property. Rather, it is seeking to remedy the irreparable and immeasurable harm done to it by Defendants, through Defendants' use of the reputation, good will, research, and/or development associated with Plaintiff's Products – qualities which should have remained exclusive to Plaintiff's Products.

Additionally, Appearing Defendants' argument regarding utility patent infringement claims being unable to seek equitable remedies, such as in *AJ's Nifty Products*, cuts against them.

10

If Appearing Defendants are correct, that utility patent infringement claims are not entitled to equitable remedies, despite Plaintiff suffering immediate and immeasurable injuries (as was the case in *AJ's Nifty Products*, 23-cv-04131, [67] at pgs. 9-11), then the additional non-patent like protections offered by an Illinois state common law claim, such as unjust enrichment, could not be preempted by federal law. However, even if the utility patent infringement claims can still seek equitable remedies, such as an asset restraint,, as Plaintiff contends and other Courts have agreed, then Plaintiff can still assert its unjust enrichment claim, as the protections sought are in regards to the reputation, good will, research, and/or development associated with Plaintiff's Products, and not to seek intellectual property protections that are otherwise unprotected by federal law.

### D. Joinder is Proper

The DEEPSOUND Defendants briefly assert that joinder is improper in the present case. However, that is not relevant when determining whether the Court should grant an asset freeze. In fact, the DEEPSOUND Defendants demonstrate why these cases are brought jointly to begin with, as there is seemingly nothing that would indicate that these defendants are interconnected, aside from some minor similarities – such as the infringing products they sell. However, it is still unclear how the DEEPSOUND Defendants are connected to one another, as these Defendants have not filed a notification of affiliates explaining their connection to one another. At the very least, Plaintiff should be allowed to take limited discovery to determine the structure and connection of these entities, before determining if they were truly improperly joined.

Additionally, "[m]isjoinder of parties is not a ground for dismissing an action" Fed. R. Civ. P. 21. Instead, the remedy is to sever claims against a party. *Id*. The question of whether to sever claims in a patent case is governed by Federal Circuit law. *See In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) ("joinder in patent cases is based on an analysis of the accused acts of

11

infringement, and this involves substantive issues unique to patent law"). Should any of the Appearing Defendants be severed, Plaintiff would ask that those claims be separated from this case under a new case number without being dismissed and refiled. Doing so promotes judicial efficiency because each separate case would not need to start over from scratch. Rather, the Court's prior Orders, notably the Court's Orders regarding alternative service, the TRO, and Preliminary Injunction Order should be maintained in the new cases.

Lastly, because the limitations on joinder in the Patent Act as amended by the American Invents Act are waivable, it would be improper to sever the claims against any of the non-moving defendants. *See* 35 U.S.C. § 299(c) ("A party that is an accused infringer may waive the limitations set forth in this section with respect to that party"). Consequently, the only parties that could be severed are the DEEPSOUND Defendants who have attempted to raise the issue. If any one or more of the Appearing Defendants are severed, the Court should then combine the separate cases for pre-trial proceedings. *See e.g., Richmond v. Lumisol Elec. Ltd.*, Nos. 13-1944 (MLC); 13-1949 (MLC); 13-1950 (MLC); 13-1951 (MLC); 13-1952 (MLC); 13-1953 (MLC); 13-1954 (MLC); 13-1957 (MLC); 13-1958 (MLC); 13-1959 (MLC); 13-1960 (MLC); and 13-2916 (MLC), 2014 U.S. Dist. LEXIS 90541, at *20-21 (D.N.J. July 3, 2014) ("Following severance, the parties are directed to consult with the Magistrate Judge to group the lawsuits into different categories based on the alleged relationships between the parties and the level of commerce at which each defendant operates and then stay the actions against the downstream retailer defendants subject to indemnification from upstream defendants"). The Patent Act only prevents consolidation of separate cases for trial, not for any pretrial purposes. *See* 35 U.S.C. § 299(a).

    **E. DEEPSOUND Defendants Have Sold Infringing Products.**

The DEEPSOUND Defendants claims there are no sales of infringing products from any of their accounts. However, based on third-party production, Plaintiff can confirm that there are

infringing sales. Additionally, Amazon only provides sales information for the ASINs identified on Schedule A [19-1] which are directly linked to a Merchant ID and does not provide infringing sales data for any other ASINs listed in the Schedule A as to another Merchant ID. So, even as to the ASINs that Plaintiff has been able to identify as infringing, it is unclear if DEEPSOUND Defendants sold any other infringing products aside from the ones linked to their Merchant IDs as identified on Schedule A to the Verified Amended Complaint [19-1].

At this time, it is too premature to determine whether DEEPSOUND Defendant's infringing sales are limited only to those identified by Amazon in its production to Plaintiff in response to the TRO or if additional infringing sales occurred. Additionally, without consulting an expert as to Plaintiff's unjust enrichment claim, it would also be difficult to ascertain the approximate damages Plaintiff has suffered at the hands of the DEEPSOUND Defendants at this time. As such, the current asset restraint is appropriate, until at least, additional discovery can be conducted.

### III.  CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court deny Defendant No. 8 GD-Whitening's Emergency Opposed Motion to Modify the Temporary Restraining Order [36] and Defendants Nos. 4 DEEPSOUND, 5 BYS Technology, 10 Carbonline, 23 Moose Store, 26 BLUE ELF, and 27 Acupress' Motion to Modify the Preliminary Injunction [50].

DATED: May 6, 2024                                    Respectfully Submitted,

/s/ Nicholas S. Lee
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com

13

Sameeul Haque
shaque@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
T: (847) 969-9123
F: (847) 969-9124

*Counsel for Plaintiff, CAO Group, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this May 6, 2024. Any other counsel of record will be served by electronic and/or first-class mail.

                                                 /s/ Nicholas S. Lee
                                                 Nicholas S. Lee